UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE AUTOMOBILE INS. CO. OF
 HARTFORD, CONNECTICUT a/s/o
 Sherry Demrick ,

                Plaintiff,

                **DECISION AND ORDER**
                08-CV-623A

    v.

ELECTROLUX HOME PRODUCTS, INC.,

                Defendant.
_____

## I.    INTRODUCTION

Pending before the Court is a motion (Dkt. No. 167) by defendant Electrolux Home Products, Inc. ("Electrolux") to dismiss this case under Rule 12(h)(3) of the Federal Rules of Civil Procedure ("FRCP").  This motion follows an unusual, last-minute twist in an otherwise routine product liability case scheduled for trial on August 9, 2011.  As set forth in its amended complaint, plaintiff The Automobile Insurance Co. of Hartford, Connecticut ("Hartford") seeks "fair, just and reasonable money damages" (Dkt. No. 17 at 7) for a claim that it paid to an insured after her gas-powered clothes dryer caught fire and destroyed her house.  In its trial brief, Hartford specified that it "seeks compensatory damages in the amount of $226,052 which is equivalent to the actual cash value of the insured's

loss." (Dkt. No. 137 at 4.)  Hartford also wants pre-judgment interest under N.Y. CPLR 5001 and post-judgment interest under 28 U.S.C. § 1961(a).

On July 27, 2011, the day before the final pretrial conference and the oral argument on some motions *in limine*, Electrolux sent Hartford a letter offering to settle the case.  (Dkt. No. 167-2.)  In the letter, Electrolux offered Hartford 100% of the requested monetary damages.  Specifically, Electrolux offered to pay $241,636—which presumably represents full damages and at least some interest—plus additional interest and costs as determined by the Court.  The only condition that Electrolux attached to the offer was that the offer was not be construed as any admission of liability.  Electrolux did not make this settlement offer under the formal procedures of FRCP 68 but has represented to the Court that it is prepared to make payment promptly and unconditionally.

Ironically, Electrolux's offer to settle this case for everything that Hartford demanded has infuriated Hartford.  Hartford rejected the settlement offer, insisting that receiving 100% reimbursement plus interest, costs, and fees does not suffice.  Assuming the mantle of a public advocate for the "[t]housands of consumers across the country [who] have been harmed by Electrolux's dryer" (Dkt. No. 169 at 4), Hartford has denounced Electrolux's settlement offer as an "abusive litigation tactic" designed to avoid a jury finding of liability, which at last

"would reveal its knowledge of a product defect that it continues to market." (*Id.*)[1] Hartford has insisted, in essence, that it must proceed to trial in the face of a 100% settlement offer because vindication for the public at large is at stake.

In response to Hartford's rejection of the settlement offer, Electrolux filed the pending motion to dismiss late in the afternoon on July 27, 2011. Electrolux argues that, even without the formal procedures of FRCP 68, its settlement offer eliminated this Court's subject-matter jurisdiction because the offer would give Hartford the maximum possible relief that a jury could award at trial. According to Electrolux, if Hartford now has the opportunity to achieve everything that it could possibly achieve at trial then this Court lacks a "live controversy" to resolve, making a trial futile. Hartford counters that Electrolux cannot compel it to settle the case and that only a formal FRCP 68 offer of judgment could deprive the Court of jurisdiction. Additionally, Hartford insists that the settlement offer is worth less than a favorable jury verdict because such a verdict would carry the additional value of public vindication.

The Court held oral argument on July 28, 2011. For the reasons below, the Court grants the motion.

---

[1] Hartford did not dispute Electrolux's contention at oral argument that an unspecified prior trial between these parties ended in a defense verdict.

**II.    DISCUSSION**

  **A.    *Subject-Matter Jurisdiction and FRCP 12(h)(3) Generally***

The rules of subject-matter jurisdiction that apply here are straightforward. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FRCP 12(h)(3). A court must ensure at all times that it has subject-matter jurisdiction because any ruling or judgment issued without it would be only hypothetical in nature. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning . . . . The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects.") (citations omitted). One factor that can deprive a court of subject-matter jurisdiction is the absence of a live controversy. "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks and citations omitted). Accordingly, the Court will review whether Electrolux's settlement offer has eliminated any live controversy from this case because it has offered Hartford full relief.

### B.     *Impact of the Settlement Offer on Jurisdiction*

"Because federal courts do not sit simply to bestow vindication in a vacuum, a federal court is required to dismiss a suit for lack of jurisdiction once a defendant has made an offer of complete relief." *Kane v. U-Haul Int'l, Inc.*, No. Civ. 01-6002, 2005 WL 2621935, at *2–3  (D.N.J. Oct. 14, 2005) (internal quotation marks omitted) (citing *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986); *Abrams v. Interco Inc.*, 719 F.2d 23, 32 (2d Cir. 1983)), *aff'd*, 218 Fed. App'x 163 (3d Cir. Feb. 7, 2007) (unpublished).  As recently as July 21, 2011 through its trial brief, Hartford demanded "compensatory damages in the amount of $226,052 which is equivalent to the actual cash value of the insured's loss."  The amended complaint contains no demand for interest or costs.  In response, Electrolux offered at least as much as Hartford formally requested—$241,636, *plus* interest and costs as the Court may determine.  In effect, then, Electrolux has offered a default judgment without actually defaulting.  A jury in this case would have nothing left to resolve relative to Hartford's requested relief, meaning that a live controversy no longer exists.  Hartford is correct that the Court cannot force it to accept Electrolux's offer, but neither can Hartford force this Court to waste its time trying a case that is effectively in default.  Without commenting on the likelihood of success, Hartford can consider a class action with a demand for punitive damages if wants to protect future consumers from dangers that it perceives.

5

The Court also is not persuaded by Hartford's contention that FRCP 68 is the only way in which a plaintiff risks dismissal by rejecting a full settlement offer. *Kane* and cases like it are important because they involved dismissals following full settlement offers that were *not* made under FRCP 68.  *Cf., e.g., McCauley v. Trans Union, L.L.C.*, 402 F.3d 340, 341 (2d Cir. 2005) (rejecting an FRCP 68 offer but directing entry of default judgment for full damages because "a party [cannot] force his opponent to confess to having violated the law, as it is always open to a defendant to default and suffer judgment to be entered against him without his admitting anything . . . . [I]f the defendant has thus thrown in the towel there is nothing left for the district court to do except enter judgment.") (alteration in the original) (internal quotation marks and citations omitted); *Toms v. Allied Bond & Collection Agency, Inc.*, 179 F.3d 103, 107 (4th Cir. 1999) (dismissing a plaintiff's appeal of a denial of class certification, where the plaintiff settled the case before appealing); *Murphy v. Equifax Check Servs., Inc.*, 35 F. Supp. 2d 200, 203–04 (D. Conn. 1999) ("[H]aving been offered the maximum amount of damages which she was entitled to recover under the [Fair Debt Collection Practices Act], plus reasonable attorney's fees and costs, plaintiff no longer has a personal stake in the outcome of this litigation for  purposes of meeting the case-or-controversy requirement of Article III, and her complaint against defendant Equifax should be dismissed . . . . Were this case to proceed to trial, plaintiff could lose, but she could not win more than what is now being offered to

her by defendant. Thus, continuing the instant case serves no legitimate purpose whatsoever."). In the face of these cases, Hartford would have only one reason to insist that subject-matter jurisdiction can exist, regardless of any actual controversy in a case, depending on *how* a defendant offers full relief. Hartford's reason would be to try to force an admission of liability from Electrolux, a maneuver that the Second Circuit prohibited explicitly in *McCauley*. This Court finds no reason to circumvent *McCauley* and instead adheres to its holding that the substance of Hartford's claims is now resolved.

### III.   CONCLUSION

For all of the foregoing reasons, the Court grants Electrolux's motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 167). The Clerk of the Court shall close this case.

Pursuant to Local Civil Rule 54(a), Hartford shall file any bill of costs within 30 days after entry of final judgment. The Court retains ancillary jurisdiction to resolve any disputes between the parties regarding interest and costs.

SO ORDERED.

*/s Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: August 1, 2011